**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

|  |  |
|---|---|
| **MR. RONALD MERCADO AND MR. JAMES GEREMIA,** | : |
| | : |
| *Plaintiffs,* | : |
| | : |
| **v.** | :    **C.A. No.: <u>3:20-cv-1783</u>** |
| **CITY OF BRIDGEPORT, CONNECTICUT,** | : |
| | : |
| *Defendant.* | : |
| | :    <u>**DECEMBER 1, 2020**</u> |

<u>**COMPLAINT**</u>

1. **This action arises out of employment discrimination based on perceived as or regarded as disability, race, color, gender and retaliation for opposition to discriminatory practices.**

2. **This Court has original jurisdiction over this action pursuant 28 U.S.C. § 1331 in that this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq* ("ADA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e ("Title VII"). This Court also has supplemental jurisdiction over the herein-cited companion State claims pursuant to 28 U.S.C. § 1367 *et seq*.**

3. **Venue of this action lies in the District of Connecticut pursuant to 28 U.S.C. § 1391 *et seq*.**

<u>**PARTIES**</u>

4. **Plaintiff Ronald Mercado ("Plaintiff Mercado") is a resident of the State of Connecticut.**

1

5. Plaintiff James Geremia ("Plaintiff Geremia") is a resident of the State of Connecticut.

6. From time to time throughout this Complaint, Plaintiffs' Mercado and Geremia may be collectively referred to as "Plaintiffs."

7. Defendant, The City of Bridgeport (hereinafter "Defendant"), is a local municipality and an employer within the meaning of 42 U.S.C. 2000e(b), 42 U.S.C. § 12111(5)(A) and Connecticut General Statute § 46a-51(10).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On October 16, 2019, Plaintiffs filed Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant for disability discrimination, race discrimination, color discrimination and gender discrimination.

9. On September 10, 2020 and September 11, 2020, respectively, the CHRO and EEOC issued releases of jurisdiction over Plaintiffs' Charges of Discrimination.

10. This action has commenced within ninety (90) days from the issuances of said releases of jurisdiction.

## BACKGROUND FACTS
### As to Plaintiff Mercado

11. Plaintiff Mercado, at all times relevant to this Complaint, is employed as a Lieutenant in Defendant's Police Department.

12. Plaintiff Mercado identifies as Caucasian, white and male.

2

13. Plaintiff Mercado began his tour of duty as a member of Defendant's Police Department on or about August 28, 2000.

14. From the time of his hire until approximately March 2019, Plaintiff Mercado's work performance was at least satisfactory.

## BACKGROUND FACTS
### As to Plaintiff Geremia

15. Plaintiff Geremia, at all times relevant to this Complaint, is employed as a Sergeant in Defendant's Police Department.

16. Plaintiff Geremia identifies as Caucasian, white and male

17. Plaintiff Geremia began his tour of duty as a member of Defendant's Police Department in or about August 2000.

18. From the time of his hire until approximately March 2019, Plaintiff's work performance was at least satisfactory.

## MARCH 2ND INCIDENT (AS TO BOTH PLAINTIFFS)

19. On or about March 2, 2019, while on duty, Plaintiffs became aware that a fellow police officer, Sergeant Mark Belinke ("Sgt. Belinke") did not report for duty as scheduled.  Plaintiffs attempted to contact Sgt. Belinke, to no avail.  As a result, Plaintiffs left Defendant's Police Department and drove to Sgt. Belinke's home to check on him.

20. Upon arriving at the home, the Plaintiffs entered Sgt. Belinke's home and discovered his body.  Upon information and belief, Sgt. Belinke committed suicide (hereinafter "The March 2nd Incident").

21. Subsequent to the March 2nd Incident, the Plaintiffs were granted schedule adjustments.  Later, Plaintiffs requested usage of their sick

3

time.  These requests were received and approved by Lieutenant Jeffrey
Grice.

## COUNT I: VIOLATION OF THE ADA (as to Plaintiff Mercado)

22. Subsequent to his requests for sick leave, Defendant began
discriminating against Plaintiff Mercado because it regarded him as or
perceived him to be psychologically disabled.  The discrimination to
which Plaintiff Mercado was subjected includes, but is not limited to, the
following.

23. On March 12, 2019, Plaintiff Mercado was unjustly suspended without
pay by then-Chief of Police Armando Perez ("Chief Perez") for being
absent without leave.  Upon information and belief, Perez has since pled
guilty in connection with his role in "rigging the 2018 chief of police
exam" as per news media reporting.

24. Subsequent to the March 2nd Incident, Defendant required the seizure of,
and did in fact seize, Plaintiff's personal firearms.  Upon information and
belief, this seizure was performed in the absence of a warrant or court
order.

25. During roll call on or about March 12, 2019, Chief Perez, among others,
announced to fellow police officers that Plaintiff was negligent in his
duties, that he was ordered to report to a psychologist and that
Defendant had removed Plaintiff's firearms from his home in order to
"protect" him and his family.  Further, upon information and belief,

Chief Perez told members of Plaintiff's Evening Shift that he (Plaintiff) would not be assigned to patrol for a while because he "needs time."

26. On March 16, 2019, the Connecticut Post published an article in which Chief Perez was quoted as saying: "I've mandated that [Plaintiff Mercado] see a psychologist."

27. As directed by Defendant, Plaintiff attended no less than three psychological sessions through Defendant's Employee Assistance Program.  Upon information and belief, the Plaintiff's psychologist advised Defendant that he was not a threat to himself or others and was ready to resume full duty without restrictions.

28. Despite being notified that Plaintiff was medically-cleared to resume full active duty, Defendant continued to regard Plaintiff as, or perceive him to be, psychologically disabled.  Defendant's continued, discriminatory treatment of Plaintiff includes, but is not limited to, the following.

29. On or about May 6, 2019, Plaintiff was suspended without pay for allegedly acting insubordinate towards Chief Perez.

30. On or about May 23, 2019, Chief Perez designated Plaintiff for "Special Assignment out of the Chief's Office."  The Special Assignment commenced on May 28th, 2019, which was Plaintiff's return to work date after serving his suspension.

31. Upon returning from his suspension, on or about May 28, 2019, Defendant took extreme steps to isolate Plaintiff from the rest of the Police Department.  For example, Plaintiff was ordered to report to the

Defendant's Traffic Division Building, yet Plaintiff's assignments did not include any traffic division duties.  Rather Plaintiff Mercado's duties included, but were not limited to, reviewing policy updates and completed required training hours.  Further, the Traffic Division Building was undergoing maintenance including repainting.  When Plaintiff Mercado complained about the odor from the work being performed, Defendant moved his work desk into the hallway near the entrance to the building.  Plaintiff Mercado was thereafter in plain sight of any person who entered the building, including fellow police officers.

32. Defendant denied Plaintiff the ability to perform his normal duties as a police officer.  The denials included, but were not limited to, the following: Plaintiff was not allowed the ability to work on patrol shifts; Plaintiff was not allowed to address police line-ups as customary for an officer of his rank; Plaintiff lost the ability to have any supervisory roles commensurate with his rank; and Plaintiff's ability to work overtime shifts was removed.

33. Defendant banned Plaintiff from entering its Police Department Headquarters.

34. Plaintiff Mercado continues to be disciplined and accused of wrongdoing unjustly by his superiors, the most recent discipline resulting in a twenty-day, unpaid suspension for an incident which occurred, and was already investigated, in 2018.

35. Upon his return to duty in May of 2020, Defendant did not honor Plaintiff Mercado's request to be assigned to the evening shift.  Such requests are normally honored by Defendant from similarly-situated Police Officers who hold the same rank as Plaintiff.

36. On or about November 3, 2020, Plaintiff Mercado submitted to Defendant a <u>Submission of Bid</u> Form with respect to his bid for a special assignment.  Upon information and belief, an application filed pursuant to a posted bid is decided by a panel.  However, subsequent to his submission, Plaintiff learned from Defendant that the bid was being re-branded as a "letter of interest" in which the assignment award is based on seniority.  As a result, the assignment went to another applicant with more seniority than Plaintiff.

37. Plaintiff Mercado is being excluded from police department events in which he was allowed to participate prior to the events of March 2nd. These events include, but may not be limited to, the "Movember Cancer Awareness Fundraiser," being chosen as a member of the firearm review board, participating in various police union functions (including the union-sponsored Officer Appreciation Day) and interfering with Plaintiff's rights to seek election to President of the local Police Union.

38. Upon information and belief, other similarly-situated police officers have been treated less severely or even more favorably than Plaintiff.  For example, Defendant employs or has employed police officers who have been criminally charged with violations of the law, including violent

offenses.  However, Defendant's disciplinary response was less severe when compared to the discipline and actions levied against Plaintiff. Upon information and belief, Defendant did not regard or perceive any of these similarly-situated, more favorably treated police officers as psychologically disabled.

39. Defendant has also treated Plaintiff differently than another similarly-situated black, female police officer.  In or about December 2017, a female officer who shall be identified here as "JA" responded to a call where a fellow police officer who shall be identified here as "TL" committed suicide.  In response, Officer JA requested, and received an extended sick leave from Defendant.  Subsequent to her return, on or about March 15, 2018, Officer JA was reassigned to a "Special Assignment out of the Chief's Office."  Unlike Plaintiff's assignment, Officer JA's assignment was specifically designated as being "in charge of Recruitment." As a benefit of this special assignment, Officer JA was, upon information and belief, afforded a police vehicle to use and was afforded the opportunity to work overtime.  Upon information and belief, Officer JA does not suffer from any psychological disability nor has Defendant perceived her as having a disability of any kind.

40. By and through the aforementioned intentional actions, which are incorporated herewith, Defendant has violated the ADA by discriminating against Plaintiff because it has regarded and/or perceived him as being psychologically disabled.

8

41. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

## COUNT II: VIOLATION OF TITLE VII (As to Plaintiff Mercado's Race)

42. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

43. By and through the aforementioned intentional actions, Defendant has violated Title VII by discriminating against Plaintiff because of his race (Caucasian).

44. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

## COUNT III: VIOLATION OF TITLE VII (As to Plaintiff Mercado's Color)

45. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

46. By and through the aforementioned intentional actions, Defendant has violated Title VII by discriminating against Plaintiff because of his color (white).

47. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT IV: VIOLATION OF TITLE VII (As to Plaintiff Mercado's Gender)**

48. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

49. By and through the aforementioned intentional actions, Defendant has violated Title VII by discriminating against Plaintiff because of his gender (male).

50. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT V: VIOLATION OF TITLE VII (Retaliation - As to Plaintiff Mercado)**

51. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

52. In response to the aforementioned intentional conduct of Defendant, Plaintiff filed charges of discrimination with the CHRO and the EEOC.

53. Subsequent to the filing of his aforementioned CHRO and EEOC charges, Defendant retaliated against Plaintiff, said retaliation including, but not being limited to, the unjustifiable discipline referenced supra.

54. By and through the aforementioned intentional actions, Defendant has violated Title VII by retaliating against Plaintiff because of his previous opposition to Defendant's discriminatory employment practices.

55. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

## COUNT VI:  VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (Perceived Disability Discrimination as to Plaintiff Mercado)

56. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

57. By and through the aforementioned intentional actions, which are incorporated herewith, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because it regarded and/or perceived him as being psychologically disabled.

58. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

## COUNT VII: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (As to Plaintiff Mercado's Race)

59. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

60. By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because of his race (Caucasian).

61. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

### COUNT VIII: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (As to Plaintiff Mercado's Color)

62. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

63. By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because of his color (white).

64. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

### COUNT IX: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (As to Plaintiff Mercado's Gender)

65. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

66. By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because of his gender (male).

67. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

### COUNT X: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (Retaliation as to Plaintiff Mercado)

68. Plaintiff Mercado incorporates by reference that which is set forth in Paragraphs 1 through 39 as if fully set forth herein.

69. In response to the aforementioned discriminatory conduct of Defendant, Plaintiff filed charges of discrimination with the CHRO and the EEOC.

70. Subsequent to the filing of his aforementioned CHRO and EEOC charges, Defendant retaliated against Plaintiff, said retaliation including, but not being limited to, the unjustifiable discipline referenced <u>supra</u>.

71. By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by retaliating against Plaintiff because of his previous opposition to Defendant's discriminatory employment practices.

72. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

## COUNT XI: VIOLATION OF 42 U.S.C. § 12101 (Perceived Disability Discrimination as to Plaintiff Geremia)

73. Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 as if fully set forth herein.

74. Subsequent to his requests for sick leave, Defendant began discriminating against Plaintiff Geremia because it regarded him as or perceived him to be psychologically disabled.  The discrimination to which Plaintiff Geremia was subjected includes, but is not limited to, the following.

75. On March 12, 2019, Plaintiff Geremia was unjustly suspended without pay by then-Chief of Police Armando Perez ("Chief Perez") for insubordination.  Upon information and belief, Perez has since pled guilty in connection with his role in "rigging the 2018 chief of police exam" as per news media reporting.

13

76. Subsequent to the March 2nd Incident, Defendant required the seizure of, and did in fact seize, Plaintiff's personal firearms.  Upon information and belief, this seizure was performed in the absence of a warrant or court order.

77. During roll call on or about March 12, 2019, Chief Perez, among others, announced to fellow police officers that Plaintiff Geremia was negligent in his duties, that he was ordered to report to a psychologist and that Defendant had removed Plaintiff's firearms from his home in order to "protect" Plaintiff and his family.  Further, upon information and belief, Chief Perez told members of Plaintiff's Evening Shift that he (Plaintiff) would not be assigned to patrol for a while because he "needs time."

78. On March 16, 2019, the Connecticut Post published an article in which Chief Perez was quoted as saying: "I've mandated that [Plaintiff Geremia] see a psychologist."

79. As directed by Defendant, Plaintiff attended no less than three psychological sessions through Defendant's Employee Assistance Program.  Upon information and belief, the Plaintiff's psychologist advised Defendant that he was not a threat to himself or others and was ready to resume full duty without restrictions.

80. Despite being notified that Plaintiff was medically-cleared to resume full active duty, Defendant continued to regard or perceive Plaintiff as being psychologically disabled.  Defendant's continued, discriminatory treatment of Plaintiff includes, but is not limited to, the following.

81. On or about May 6, 2019, Plaintiff was suspended without pay for allegedly acting insubordinate towards Chief Perez.

82. On or about May 23, 2019, Chief Perez designated Plaintiff for "Special Assignment out of the Chief's Office." The Special Assignment commenced on May 28th, 2019, which was Plaintiff's return to work date after serving his suspension.

83. Upon returning from his suspension, on or about May 28, 2019, Defendant took extreme steps to isolate Plaintiff from the rest of the Police Department. For example, Defendant designated Plaintiff Geremia's "Special Assignment" as reporting to Defendant's Animal Control Department. Plaintiff's day-to-day duties and responsibilities materialized to nothing more than feeding the various animals and cleaning the kennels of animal excrement.

84. Defendant denied Plaintiff the ability to act as a police officer. The denials included, but were not limited to, the following: Plaintiff was not allowed the ability to work on patrol shifts; Plaintiff was not allowed to address police line-ups as customary for an officer of his rank; Plaintiff lost the ability to have any supervisory roles commensurate with his rank; and Plaintiff's ability to work overtime shifts was removed.

85. Defendant banned Plaintiff from entering its Police Department Headquarters.

86. On October 23, 2019, Defendant assigned Plaintiff Geremia to the Police Department's Front Desk. Plaintiff's job duties while assigned to the

Front Desk included, but were not limited to, directing the flow of
visitors, daily inspections for uniform compliance and maintaining the
desk area for organization of memoranda and cleanliness.  Plaintiff is
not aware of any other similarly-situated officer of his rank and seniority
being assigned to the Front Desk.

87. Upon information and belief, other similarly-situated police officers have
been treated less severely or more favorably than Plaintiff.  For
example, Defendant employs or has employed police officers who have
been criminally charged with violations of the law, including violent
offenses.  However, Defendant's disciplinary response was less severe
when compared to the discipline and actions levied against Plaintiff.
Upon information and belief, Defendant did not regard or perceive any
of those similarly-situated, more favorably treated police officers as
psychologically disabled.

88. Defendant has also treated Plaintiff differently than another similarly-
situated black, female police officer.  In or about December 2017, a
female officer who shall be identified here as "JA" responded to a call
where a fellow police officer who shall be identified here as "TL"
committed suicide.  In response, Officer JA requested, and received an
extended sick leave from Defendant.  Subsequent to her return, on or
about March 15, 2018, Officer JA was reassigned to a "Special
Assignment out of the Chief's Office."  Unlike Plaintiff's assignment,
Officer JA's assignment was specifically designated as being "in charge

of Recruitment." As a benefit of this special assignment, Officer JA was, upon information and belief, afforded a police vehicle which she could use and was afforded the opportunity to work overtime.  Upon information and belief, Officer JA does not suffer from any psychological disability nor has Defendant perceived her as having a disability of any kind.

89. By and through the aforementioned intentional actions, which are incorporated herewith, Defendant has violated the ADA by discriminating against Plaintiff because it regarded and/or perceived him as being psychologically disabled.

90. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XII: VIOLATION OF TITLE VII (As to Plaintiff Geremia's Race)**

91. Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

92. By and through the aforementioned intentional actions, Defendant has violated Title VII by discriminating against Plaintiff because of his race (Caucasian).

93. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XIII: VIOLATION OF TITLE VII (As to Plaintiff Geremia's Color)**

94. Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

95. By and through the aforementioned intentional actions, Defendant has violated Title VII by discriminating against Plaintiff because of his color (white).

96. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XIV: VIOLATION OF TITLE VII (As to Plaintiff Geremia's Gender)**

97. Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

98. By and through the aforementioned intentional actions, Defendant has violated Title VII by discriminating against Plaintiff because of his gender (male).

99. Plaintiff was damaged as a direct and proximate result of Defendant's intentional

## COUNT XV: VIOLATION OF TITLE VII (Retaliation as to Plaintiff Geremia)

100. Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

101. In response to the aforementioned discriminatory conduct of Defendant, Plaintiff filed charges of discrimination with the CHRO and the EEOC.

102. Subsequent to the filing of his aforementioned CHRO and EEOC charges, Defendant retaliated against Plaintiff, said retaliation including, but not being limited to, forcing Plaintiff to use his accrued personal time for his absence from work on October 31, 2020 when it was previously designated as vacation time or a scheduled day off.

103. By and through the aforementioned intentional actions, Defendant has violated Title VII by retaliating against Plaintiff because of his previous opposition to Defendant's discriminatory employment practices.

104. Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XVI:  VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 _et seq._
(Perceived Disability Discrimination as to Plaintiff Geremia)**

    105.   Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

    106.   By and through the aforementioned intentional actions, which are incorporated herewith, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because it regarded and/or perceived him as being psychologically disabled.

    107.   Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XVII: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 _et seq._
(As to Plaintiff Geremia's Race)**

    108.   Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

    109.   By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because of his race (Caucasian).

    110.   Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XVIII: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (As to Plaintiff Geremia's Color)**

111.    Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

112.    By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because of his color (white).

113.    Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XIX: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.* (As to Plaintiff Geremia's Gender)**

114.    Plaintiff Geremia incorporates by reference that which is set forth in Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set forth herein.

115.    By and through the aforementioned intentional actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by discriminating against Plaintiff because of his gender (male).

116.    Plaintiff was damaged as a direct and proximate result of Defendant's intentional conduct.

**COUNT XX: VIOLATION OF CONNECTICUT GENERAL STATUTE § 46a-60 *et seq.*
(Retaliation as to Plaintiff Geremia)**

117.    Plaintiff Geremia incorporates by reference that which is set forth in
Paragraphs 1 through 21 and Paragraphs 73 through 88 as if fully set
forth herein.

118.    In response to the aforementioned discriminatory conduct of
Defendant, Plaintiff filed charges of discrimination with the CHRO and
the EEOC.

119.    Subsequent to the filing of his aforementioned CHRO and EEOC
charges, Defendant retaliated against Plaintiff, said retaliation including,
but not being limited to, forcing Plaintiff to use his accrued personal
time for his absence from work on October 31, 2020 when it was
previously designated as vacation time or a scheduled day off.

120.    By and through the aforementioned intentional actions, Defendant
has violated Conn. Gen. Stat. § 46a-60 by retaliating against Plaintiff
because of his previous opposition to Defendant's discriminatory
employment practices.

121.    Plaintiff was damaged as a direct and proximate result of
Defendant's intentional conduct.

## PRAYER FOR RELIEF

**WHEREFORE, the Plaintiffs prays that this Court:**

**(1)  declare that the actions/inactions complained of in this Complaint are unlawful;**

**(2)  order the Defendant to make Plaintiffs whole;**

**(3)  order that the Defendant pay Plaintiffs compensatory damages;**

**(4)  order that the Defendant pay Plaintiffs punitive damages;**

**(5)  retain jurisdiction of this action to ensure full compliance;**

**(6)  order any and all equitable relief sought in this Complaint;**

**(7)  order the Defendant to pay Plaintiffs' costs and expenses and reasonable attorney's fees;**

**(8)  grant such other legal or equitable relief to Plaintiffs as the court deems just and proper.**

**Respectfully submitted by,
Plaintiffs,
By and through their attorney,**

**/s/  Daniel T. Angelone #CT29307**
**Daniel T. Angelone (# CT29307)**
**ANGELONE LAW OFFICES, L.L.C.**
**799 Silver Lane**
**2nd Floor**
**Trumbull, CT  06611**
**203-378-2979**
**203-375-5003 (fax)**
**daniel@angelonelaw.com**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
_____        :
                                    :
MR. RONALD MERCADO AND              :
MR. JAMES GEREMIA,                  :
                                    :
            Plaintiffs,             :
                                    :
v.                                  :        C.A. No.:  3:20-cv-1783
                       :            :
CITY OF BRIDGEPORT,                 :
CONNECTICUT,                        :
                                    :
            Defendant.              :
_____        :        DECEMBER 1, 2020
```

### JURISDICTIONAL AMOUNT SUFFICIENCY AND DEMAND FOR JURY TRIAL

Plaintiffs' damages are in an amount sufficient to invoke the jurisdiction of this Court.

Plaintiffs hereby demand a trial by jury.

Respectfully submitted by,
Plaintiffs,
By and through their attorney,

*/s/  Daniel T. Angelone #CT29307*
Daniel T. Angelone (# CT29307)
ANGELONE LAW OFFICES, L.L.C.
799 Silver Lane
2nd Floor
Trumbull, CT  06611
203-378-2979
203-375-5003 (fax)
daniel@angelonelaw.com